IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>LOURDES ROJAS ALMANZA, )<br>)<br>Defendant. ) | Case No. 1:09cr430-002<br><br>Sentencing Date: April 30, 2010<br><br>Hon. Gerald Bruce Lee |

## DEFENDANT'S POSITION ON SENTENCING FACTORS

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines, and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Lourdes Rojas Almanza, through counsel, states that she has received and reviewed the Presentence Investigation Report ("PSR") and the subsequent Addendum prepared in this case.

On December 17, 2009, Ms. Almanza entered a plea of guilty to one count of Conspiracy to Commit Bank Fraud and Wire Fraud of 18 U.S.C. § 1349 and 2342. The PSR indicates that Ms. Almanza has a base offense level of 7. Additionally the PSR adds 20 points, due to a loss calculation of more than seven million but less than twenty million. Moreover, the PSR maintains that Ms. Almanza should receive an enhancement, increasing her offense level by 2 additional points, for taking part in a conspiracy which affected 10 or more victims. This brings her offense level to 29. Ms. Almanza has accepted responsibility of her conduct and the PSR recommends that she receives the applicable 2 point reduction. Additionally, the government will move this court for a 1 point reduction, based upon Ms. Almanza's timely plea. Thus, according to the PSR her resulting offense level is 29, and her advisory guideline range would be

1

63-78 months. Ms. Almanza objects to the guideline calculation proposed by the PSR. Ms. Almanza submits that a guideline offense level of 22 and advisory guideline range of 41-51 is more consistent with her plea agreement and conduct during the conspiracy. For the reasons set forth below, Ms. Almanza submits that a total of 36 months in confinement is sufficient to accomplish the purpose of sentencing in this case.

## ARGUMENT

### AMOUNT OF LOSS

The amount of loss contributable to and foreseeable by Ms. Almanza should be between two million and seven million dollars. This would result in an eighteen point increase to her base offense level instead of the twenty point increase proposed by the PSR.

The PSR attributes losses directly attributable to Ms. Almanza that are not in her plea agreement. Specifically, the PSR attributes losses from 6105 Augusta Drive, 7618 Savannah Street, and 6002 Frederick Street, and 6604 Edsall Road directly to Ms. Almanza. These properties were initially included in Ms. Almanza's statement of facts, but were subsequently removed, after the Defendant presented sufficient proof to the government that she was not involved in conduct that eventually resulted in the loss.

The losses for these properties should not be attributable to Ms. Almanza, and should not be counted in the amount of loss for purposes of calculating her advisory guidelines.

### 6105 August Drive

The report states that, "J.R. met with Ms. Almanza to obtain a mortgage loan for the property located at 6105 Augusta Drive and signed a URLA that included false information." The Government and defense counsel reviewed the URLA for this property and in fact, it was not signed by Ms. Almanza, but was signed by her cousin. (See Defense Exhibit 1). Due to the

2

birth of her first child, Ms. Almanza was not even working at the time of this transaction. Ms. Almanza was not involved in the process of obtaining a loan for J.R. for this property. The Government was satisfied with this explanation and thus agreed to remove it from the properties that Ms. Almanza would be held accountable for.

**7618 Savannah Street**

The PSR states that Ms. Almanza attended the settlement for the property located at 7618 Savannah Street and signed the HUD-1 on behalf of Ruben. The report goes on to state that Ms. Almanza received a commission for her work as the listing agent for this property. Ms. Almanza only attended the settlement as a favor for her brother whom was out of town. She had no information in about how the loan for this property was obtained, or about the details of this real estate transaction. She did not take part in the loan process. Furthermore, she did not receive a commission for this property. The Government and Defense Counsel reviewed the listing document for this property, and upon further inspection it was determined to have expired at the time it was sold. Ms. Almanza was not the listing agent at the time that this property was sold. The Government was satisfied with this proof and thus agreed to remove the property from those that Ms. Almanza would be held accountable for.

**6002 Frederick Street**

The PSR also attributes the loss amount from the foreclosure on 6002 Frederick Street to Ms. Almanza because her name was listed on the title. Ms. Almanza's only connection with the property located at 6002 Frederick Street is the fact that she was unknowingly listed on the title by her brother Jaime. In fact Ms. Almanza had no idea that her name was on the title until her brother was completing the process of selling it, and it was at this time that she received a call informing her that her presence was required at the closing. She was not the loan officer,

3

realtor, or listing agent for this property. Ms. Almanza had no information or details concerning the sell and purchase of this property. She did not receive a commission or anything of value when this property was sold. This information was communicated to the government, and they removed this property from the Ms. Almanza's Statement of Facts.

### 6604 Edsall Road

The PSR report also states that Ms. Almanza's actions directly led to the loss amount from the foreclosure on 6604 Edsall Road. The report relies on information that Ms. Almanza and her brother Ruben maintained a joint checking account. The PSR assumes that both Ruben and Ms. Almanza transferred money from the joint bank account into Rodriquez's account to assist him with the purchase of 6604 Edsall Road. Ms. Almanza and Ruben shared this account which was used for personal as well as business purposes. Ms. Almanza did not take part in the transfer in question and had no knowledge of its occurrence.

The PSR wrongly attributes the loss amounts from the above listed properties to actions directly caused by Ms. Almanza. Ms. Almanza, through counsel, was diligent in addressing these allegations in a timely fashion with the Government. She proffered valid defense to each allegation of her involvement in those properties. Therefore the four properties have a loss amount that equates to $1,152,950.00. This amount should not be included in the amount of loss.

### Additional Properties under Relevant Conduct

The PSR goes on to list approximately eleven additional properties which were sold at a loss due to the conspiracy. The report states that Ms. Almanza should be responsible for these properties as relevant conduct. It would be unjust and improper to hold Ms. Almanza responsible for these properties. Her brother, Ruben, and others involved in this conspiracy also

took part in a large number of legal transactions as real estate agents, and secured proper loans. Ms. Almanza played no role in the securing of bank loans for these additional properties. She played no role in the purchase or selling of these homes. She did not benefit in any way from these transactions, and was unaware of how the loans were processed. This conspiracy is not similar to a drug distribution conspiracy in which all transactions would be in violation of the law. Despite certain transactions that were done fraudulently, there were many valid loans being processed. Since, Ms. Almanza was not a part of these transactions; it is not fair for her to assume that they were done illegally. Ms. Almanza did not share an office space with Ruben or the other charged conspirators. Therefore, it is not plausible for Ms. Almanza to foresee of every property that Ruben and the others processed, unless she was directly involved in the real estate transaction. The loss amounts for these properties should not be included for purposes of calculating the advisory guideline range. The loss amount for these properties equate to $3,350,899.00.

### Number of Victims

Considering that Ms. Almanza should not be held directly or indirectly accountable for the losses previously referenced, the number of victims enhancement does not apply. There are nine banks that were affected by Ms. Almanza conduct in the conspiracy. This is why the Government and Defense Counsel agreed that the enhancement for number of victims is inapplicable to Ms. Almanza's case. Ms. Almanza should not receive the additional two point enhancement to her advisory guideline calculation, because her conduct only affected nine victims.

For the aforementioned reasons, Ms. Almanza submits that an offense level of 22 and an advisory guideline range of 41-51 months is more consistent with her plea agreement and conduct during the conspiracy

## APPLICATION OF U.S.C. §3553(a) Factors

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, *See Rita v. United States*, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a).

### A. The Nature and Circumstances of the Offense

Ms. Almanza entered a guilty plea admitting to her involvement in a real estate scam that revolved around unqualified home purchasers using straw purchasers to secure mortgage loans for homes in the Northern Virginia area. Ms. Almanza was the first of almost a dozen co-

defendants to accept responsibility for her involvement in the conspiracy. Ms. Almanza's was the loan officer who worked to secure loans using false information. The straw purchasers would come to Ms. Almanza seeking approval for Mortgage loans. Ms. Almanza would input false information on the loan applications also known as the Uniform Residential Loan Application (hereinafter URLA), and would sign her name. The straw purchaser would also sign the URLA. The URLA was then faxed over to the lending institution that would either accept or reject the request. As the loan officer, Ms. Almanza would receive a commission for her work once the property was successfully purchased. The conspiracy was fueled by a desire for individuals in a largely Hispanic community whom wanted to purchase their piece of "The American Dream", but didn't have the necessary credit rating or credentials to make it a reality. The straw purchasers capitalized on this need and began requesting loans for the properties and receiving compensation for applying for the mortgage loans. In many instances, once the home was successfully purchased, the unqualified purchasers would pay the mortgage payments to the straw purchasers directly. Unfortunately, many of the unqualified purchasers were unable to stay current on payments, and in many cases the homes were forced into foreclosure.

Ms. Almanza became involved in the conspiracy shortly after starting work as a loan officer. She was first employed by a company called Charter Funding. Her supervisors quickly educated her on how to falsify URLAs to maximize the chances of approval. Ms. Almanza realized that falsifying the URLAs was wrong, but also saw it as a way that she was helping those in her community secure their first home. She mistakenly believed that these individuals would be able to make the payments.

The other co-conspirators played more of an active and recruiting role, while Ms.

7

Almanza role was focused on getting approval the approval for the mortgage loans. Ms. Almanza had no details on how the straw purchasers were identified and compensated by the other co-conspirators. There were many facets of the conspiracy that were and still remain a mystery to Ms. Almanza.

### B. The History and Characteristics of the Defendant, the Need to Provide the Defendant with Needed Educational Training, and the Need to Provide Restitution.

Ms. Almanza legally immigrated to the United State of America from Bolivia as an adult. She was raised by her mother in Bolivia and has four siblings. Her mother struggled to raise her children and had to travel a lot to find work. Ms. Almanza was an accomplished student and graduated at the age of seventeen years old. After coming to the United States, Ms. Almanza was married to Christian Espinoza in 2004. Ms. Almanza was able to become a permanent resident in 2006, because of her Marriage to Mr. Espinoza, who was an American citizen. The couple later divorced in 2007, but the marriage had been turbulent before that time. Ms. Almanza became a permanent resident in 2006. Ms. Almanza has sole custody of their daughter Wayra Espinoza who is four years old. She is a single mother, as Mr. Espinoza resides in New Jersey and shows no interest in raising their daughter. Ms. Almanza is unsure who will be raising her daughter while she serves her period of incarceration. Ms. Almanza believes that her primary responsibility is to provide and properly raise her daughter. She is very active with Wayra's schooling.

Ms. Almanza obtained her real estate license in April 2004. Coincidentally, it is set to expire on the day of her sentencing on April 30, 2004. Ms. Almanza obtained her real estate license as a means to provide income for her family, and also to assist members in the Hispanic community with the purchase of a home. Sadly, in seeking to provide assistance to others, she

8

became encompassed and influenced by an industry practice that was criminal in nature. She recognizes that her good intentions are no excuse for her criminal conduct.

Ms. Almanza's family members are also involved in the conspiracy. Her brothers, sisters, and mother have all been targeted by agents in regards to their participation in the conspiracy. Unfortunately, family influence was a factor in Ms. Almanza's participation in this conspiracy. She is extremely loyal and committed to all of her family members. Sadly, when asked to take part in certain acts, she didn't have the will power to decline.

### C. The Kinds of Sentences Available

Ms. Almanza will be facing deportation after completing any amount of confinement ordered by this Court. Her ability to continue to reside in the United States after her conviction will be immediately challenged, and she will most likely be deported. Ms. Almanza requests a sentence that takes her looming deportation into account. She knows that she will have to start from "square one" in Bolivia, and her daughter will not have the benefit of being able to reside in a country that would have offered her better opportunities. Essentially, Ms. Almanza will be punished twice for her conduct. She will have to serve a period of confinement with the Bureau of Prisons, and then upon her releases be forced to face deportation hearings.

### D. The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation.

A sentence of 36 months of confinement is sufficient to meet the basic aims of sentencing. This will be Ms Almanza's first time serving a period of confinement, and her first time being forced to spend any time away from her daughter. Ms. Almanza is distraught by the idea of being away from her daughter, and has vowed to steer clear of any illegal conduct in the future. As a matter of fact, Ms. Almanza had already seized her participation in the conspiracy

long before her indictment. She no longer has any desire to take part in illegal conduct, and refuses to let family or money change her decision to live on the right side of the law.

A sentence of 36 months of confinement followed by supervision, is clearly "just punishment", for Ms. Almanza. She did not play a large role in the conspiracy, and she is a single mother, who will lose temporary custody of her child. Moreover, she will most likely be deported from the United States following her confinement. A sentence of 36 months of confinement is sufficient to meet the basic aims of sentencing.

### E. The Need to Avoid Unwarranted Sentences Disparities.

Ms. Almanza was a single player in a conspiracy that involved several other individuals in the Northern Virginia area. She is the only co-conspirator charged at this time that served in the capacity as a loan officer. Considering that her role is completely different than the realtors and straw purchasers, there is no danger of a sentencing disparity amongst the co-defendants.

### CONCLUSION

For the reasons stated above, Ms. Almanza requests that this court impose a sentence of 36 months of confinement. It is Ms. Almanza's position that this sentence is sufficient to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a). Ms. Almanza also requests that the Court impose no fine or costs of confinement or supervision.

Respectfully submitted,

Lourdes Rojas Almanza
By Counsel,

By:_____/s/_____
Jonathan A. Simms
Attorney for Lourdes Rojas Almanza
Rich Rosenthal Brincefield Manitta Dzubin & Kroeger, LLP
201 N. Union Street, Suite 140
Alexandria, Virginia 22304
(703) 299-3440
(703) 299-3441 (Fax)
JASimms@RRBMDK.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2010 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Charles F. Connolly, Esq.
Marla B. Tusk, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing will be delivered to Chambers within one business day of the electronic filing. A courtesy copy also will be delivered to the assigned probation officer at U.S. Probation Officer, Third Floor, 401 Courthouse Square, Alexandria, Virginia, 22314.

By:_____/s/_____
Jonathan A. Simms
Attorney Lourdes Rojas Almanza
Rich Rosenthal Brincefield Manitta Dzubin & Kroeger, LLP
201 N. Union Street, Suite 140
Alexandria, Virginia 22304
(703) 299-3440
(703) 299-3441 (Fax)
JASimms@RRBMDK.com



DEFENDANT'S EXHIBIT 1

XPAMELA-12/19/2005



# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain):  ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number VA05101597PL-L |
|---|---|---|---|

| Amount $ 458,000 | Interest Rate 7.250 % | No. of Months 360/360 | Amortization Type: ☐ Fixed Rate  ☐ GPM  ☑ ARM (type): 2/28 I.O  ☐ Other (explain): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, ZIP)
6105 AUGUSTA DRIVE, Springfield, VA 22150   County: Fairfax    No. of Units: 1

Legal Description of Subject Property (attach description if necessary)   Year Built

Purpose of Loan: ☑ Purchase ☐ Construction ☐ Other (explain): ☐ Refinance ☐ Construction-Permanent
Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment

*Complete this line if construction or construction-permanent loan.*
| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |

*Complete this line if this is a refinance loan.*
| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made  Cost: $ |

Title will be held in what Name(s): JOAQUIN E RETANA
Manner in which Title will be held: SOLE TENANT
Estate will be held in: ☑ Fee Simple  ☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
Checking/Savings

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | JOAQUIN E RETANA | |
| Social Security Number | 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 | |
| Home Phone (incl. area code) | 703-451-0125 | |
| DOB (MM/DD/YYYY) | 07/05/1969 | |
| Yrs. School | 16 | |
| Marital Status | ☑ Married ☐ Separated ☐ Unmarried (include single, divorced, widowed) | ☐ Married ☐ Separated ☐ Unmarried (include single, divorced, widowed) |
| Dependents (not listed by other) | no. 2  ages 3,1 | no.  ages |
| Present Address (street, city, state, ZIP) | 8554 LEE VALLEY DRIVE #301  Springfield, VA 22150  ☐ Own ☑ Rent  1 No. Yrs. | ☐ Own ☐ Rent  No. Yrs. |
| Mailing Address, if different from Present Address | | |

*If residing at present address for less than two years, complete the following:*
| Former Address (street, city, state, ZIP) | 7203 LOISDALE ROAD  Springfield, VA 22150  ☐ Own ☑ Rent  3 No. Yrs. | ☐ Own ☐ Rent  No. Yrs. |

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | CARPET ONE OF ALEXANDRIA  430 SOUTH PICKETT STREET  Alexandria, VA 22304  ☐ Self Employed | ☐ Self Employed |
| Yrs. on this job | 4 yr(s) 0 mth(s) | |
| Yrs. employed in this line of work/profession | 8 | |
| Position/Title/Type of Business | PROJECT SUPERVISOR | |
| Business Phone (incl. area code) | 703-370-0000 | |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

Freddie Mac Form 65  01/04
Calyx Form 1003 Loanapp1.frm 01/04
Page 1 of 4
Borrower _____  Co-Borrower _____
Fannie Mae Form 1003  01/04

LF_66

XPAMELA-12/19/2005

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 10,750.00 | $ | $ 10,750.00 | Rent | $ 2,000.00 | |
| Overtime | | | | First Mortgage (P&I) | | $ 2,765.00 |
| Bonuses | | | | Other Financing (P&I) | | 1,041.95 |
| Commissions | | | | Hazard Insurance | | 50.00 |
| Dividends/Interest | | | | Real Estate Taxes | | 262.50 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 10,750.00 | $ | $ 10,750.00 | Total | $ 2,000.00 | $ 4,119.45 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: EMD | $ | | | |
| | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union CHEVY CHASE | | CAP ONE BK | | |
| | | Acct. no. 517805256237 | 32 / 0 | 579 |
| Acct. no. | $ 35,000 | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | HSBC NV PO BOX 98708 LAS VEGAS NV 89193 | | |
| | | Acct. no. 544045591309 | 15 / 0 | 333 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | TOYOTA MOTOR CREDIT | | |
| | | Acct. no. 70403162925340001 | 639 / 57 | 24,295 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | WASH MUTUAL/PROVIDIAN PO BOX 9180 PLEASANTON CA 94566 | | |
| | | Acct. no. 3529426769 | 22 / 0 | 706 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | AFNI, INC. PO BOX 3427 BLOOMINGTON IL 61702 | | |
| | | Acct. no. CINGULAR-2003231745 | 0 / 0 | 365 |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value Face amount: $ | $ | AMERICAN HONDA FINANCE 8281 KATELLA AVE STE 1A CYPRESS, CA 90630 | | |
| Subtotal Liquid Assets | $ 35,000 | Acct. no. 11025564 | / 0 | 8,317 |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | BANKAMERICA | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) 2004 FORD EXPEDITION 1992 TOYOTA CAMRY | $ 20,000 6,000 | Acct. no. 435621000471 Alimony/Child Support/Separate Maintenance Payments Owed to: | 0 / 0 $ | 2,818 |
| Other Assets (itemize) PERSONAL PROPERTY | $ 100,000 | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 632 | |
| Total Assets a. | $ 160,000 | Net Worth (a minus b) $ 87,438 | Total Liabilities b. | $ 72,562 |

Freddie Mac Form 65  01/04
Calyx Form 1003 Loanapp2.frm 01/04

Page 2 of 4

Borrower _____
Co-Borrower _____

Fannie Mae Form 1003  01/04

LF_67

XPAMELA-12/19/2005

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 570,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 1,082.30 |
| f. Estimated closing costs | 13,540.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 584,622.30 |
| j. Subordinate financing | 114,000.00 |
| k. Borrower's closing costs paid by Seller | 14,000.00 |
| l. Other Credits (explain) Cash Deposit | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 456,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 456,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 622.30 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | Co-Borrower |
|---|---|---|
| | Yes No | Yes No |
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☒ | ☐ ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| j. Are you a U. S. citizen? | ☒ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☐ ☒ | ☐ ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature X [signature] | Date 12/5/05 | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☒ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☒ Hispanic or Latino   ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☒ White | Race: | ☐ American Indian or Alaska Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☐ Female   ☒ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: ☒ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Name (print or type) LORENA ALMANZA | Name and Address of Interviewer's Employer ALDA HOME MORTGAGE 7700 LITTLE RIVER TNPK SUITE 101 ANNANDALE, VA 22003 (P) 703-941-3111 (F) 703-941-6835 |
|---|---|---|
| | Interviewer's Signature | Date |
| | Interviewer's Phone Number (incl. area code) 703-941-3111 | |